THE CITY OF NEW YORK, Plaintiff, *v.* THOMAS E. MURRAY, JR., as Receiver of INTERBOROUGH RAPID TRANSIT COMPANY and Others, Defendants.

First Department, June 23, 1936.

*Joseph L. Weiner* of counsel [*Herman Horowitz* with him on the brief; *Paul Windels, Corporation Counsel*], for the plaintiff.

*J. Osgood Nichols* of counsel [*Miller, Owen, Otis & Bailly,* attorneys for Thomas E. Murray, Jr., as receiver of Interborough Rapid Transit Company; *Hughes, Schurman & Dwight,* attorneys for William Roberts, as receiver of Manhattan Railway Company; and *Charles Franklin,* attorney for Manhattan Railway Company], for the defendants.

GLENNON, J. This is a submission of a controversy under sections 546 and 547 of the Civil Practice Act, in which the plaintiff seeks a judgment directing the defendants to relocate in underground ducts power cables attached to that portion of the demolished Thirty-fourth street elevated spur, which has been allowed to remain for the purpose of supporting the cables, and to bear the expense of the work in the first instance. No question is here presented as to the right of the defendants to reimbursement.

It is agreed that the rights of the parties are to be determined by a construction of section 4 of chapter 431 of the Laws of 1926.

The authority under which the condemnation and removal by the city of the Thirty-fourth street spur is found in chapter 431 of the Laws of 1926. Section 4 thereof reads as follows:

" § 4. The board of estimate and apportionment shall have authority, subject to the approval of the transit commission, to determine whether the condemnation and removal of the elevated railroad structure under authority of this act will render it necessary to strengthen or provide new supports to the elevated railroad structure not condemned, to relocate or modify stairways, approaches, supports and station facilities and to provide for the relocation of and where necessary to place underground the existing power cables for purposes similar to those for which they are now used or the necessary alternative power transmission, and if said board shall determine that the removal of the elevated railroad structure condemned pursuant to the provisions of this act will render it necessary to strengthen or provide new supports; to relocate or modify stairways, approaches, supports and station facilities and to provide for the relocation of and where necessary to place underground existing power cables for purposes similar to those for which they are now used, said board, subject to the approval of the transit commission, shall approve plans therefor and said plans, when approved by said board and by said transit commission, shall be authority for the construction and maintenance of the new structures and supports shown thereon; but the approval of such plans shall not be prerequisite to the right to condemn hereby granted nor shall such approval be binding upon the court in determining, for the purposes of estimating the damages, the changes, alterations or improvements to the elevated railroad structures not condemned, made necessary by the removal of the elevated railroad structures condemned."

It will be noted that under the wording of the section, the city is required " to provide " for the relocation of and " to place underground " power cables. Nowhere are there any words which might indicate that the receivers of the railroads and the railroads themselves are to bear the expense of this improvement in the first instance. It may well be that the lawmakers had in mind in enacting this legislation that the railroads, named as parties defendants, might not have funds sufficient on hand to outlay for the work which necessarily had to be done. While it is true that the power cables are the property of the railroads, it is likewise true that the railroads will not benefit to any appreciable extent by the relocation of the cables in the underground ducts.

The statute should be strictly construed since it is in derogation of the railroads' property rights enjoyed pursuant to the provisions of their franchise.

Accordingly, we are of the opinion that the judgment should be rendered in favor of the defendants, without costs.

MARTIN, P. J., McAVOY, O'MALLEY and TOWNLEY, JJ., concur.

Judgment unanimously directed in favor of the defendants, without costs. Settle order on notice.